# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

DAVID COURTNEY ZELLER,

   Plaintiff,

v.

CO II YUN SEONG CHOI,

   Defendant.

Civil Action No. TDC-17-2030

## MEMORANDUM OPINION

Plaintiff David Courtney Zeller, an inmate incarcerated at Western Correctional Institution in Cumberland, Maryland, has filed a Complaint asserting that he was subjected to excessive use of force at the Jessup Correctional Institution ("JCI") in Jessup, Maryland in violation of his constitutional rights. Defendant Yun Seong Choi, a correctional officer at JCI, has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, to which Zeller has filed a memorandum in opposition. Also pending before the Court is Zeller's Motion for Appointment of Counsel, which will be denied. Having reviewed the Complaint and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Choi's Motion for Summary Judgment will be granted.

## BACKGROUND

Zeller claims that on January 16, 2017, while waiting outside the shower, he asked to speak with the tier sergeant about the cleanliness of the showers. Correctional Officer II Choi told him that he would have to wait in his cell while he called a supervisor, to which Zeller replied, "No way, Jose." Compl. 1-2, ECF No. 1. Choi insisted that Zeller return to his cell, but Zeller did not

want to skip his shower, so he told Choi, "We can wait right here while you get a radio." *Id.* at 2. Zeller, who was wearing handcuffs, then he pulled his right upper arm from Choi's grasp. Zeller alleges that Choi then "threw, slammed me face first down hard onto the hard concrete floor" of the tier. *Id.* When Choi rolled Zeller over, Zeller swung a plastic bag containing shower items, hitting Choi's face. Zeller claims that at that point, six to eight correctional officers assaulted him with punches and kicks. Zeller was then escorted to the medical unit. He asserts that he was "OK at the time," but several days later he fell down without warning but that "medical has yet to do anything." *Id.* at 3. Zeller does not specify what relief he seeks.

By contrast, Choi, in a declaration, asserts that on January 16, 2017, he and Correctional Officer Okoi escorted Zeller, who was housed on a disciplinary segregation tier, to the shower. Zeller was in handcuffs with the handcuffs in front of his body. As they approached the shower, Zeller "aggressively pulled away from us, causing us to lose our grip." Choi Decl. ¶ 7, ECF No. 16-3. Choi took Zeller to the ground to regain control. Zeller struck the right side of Choi's face with a plastic bag and scratched his arm. Another officer arrived to assist and escorted Zeller to the medical area for evaluation. Choi has had no further contact with Zeller.

On the day of the incident, Zeller received medical treatment for minor lacerations on his arms and pain in his neck. A nurse applied steri-strips to Zeller's lacerations, advised him to use cold compresses on his neck, and offered him Motrin. Choi also received medical care after the incident for an abrasion on his right upper arm and a contusion on his head.

Choi submitted a written statement for a Use of Force Incident Report and issued Zeller a notice of inmate rule violation. Choi's supervisor concluded that the force used "was in accordance with the Use of Force Manual in order to regain control of [Zeller] who was displaying noncompliant behavior." Use of Force Rep. 1, ECF 16-2 at 5. The Intelligence and Investigative

Division ("IID") was notified. On January 30, 2017, a hearing officer found Zeller guilty of engaging in a disruptive act, committing assault or battery on correctional staff, and disobeying an order. The hearing officer sanctioned Zeller by placing him in segregation for 365 days, revoking 715 diminution credits, and suspending his visitation privileges.

**DISCUSSION**

**I.    Motion for Appointment of Counsel**

Zeller filed a Motion for Appointment of Counsel, without specifying in which of his pending cases he intended to file the Motion. The Motion was docketed in this matter and several other pending cases. Zeller's Motion for Appointment of Counsel will be considered here in the specific context of the present case.

Zeller seeks appointment of counsel because he has filed multiple cases in this Court and suffers from mental illness, making it difficult for him to effectively manage his litigation. He provides no more specific reason why he is unable to litigate the issues in this case on his own. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also*

*Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances.

To date, Zeller has adequately presented his claims, and his mental illness does not appear to have hindered his capacity to litigate as evidenced by his numerous filings in this case and in this Court. His motions and previous filings demonstrate his ability to present the legal and factual basis of his claims or to secure assistance in doing so. Moreover, Zeller has demonstrated that he understands and is able to communicate with the Court and respond to Orders and Defendants' filings. At the present time, therefore, Zeller's multiple cases and mental health condition do not amount to exceptional circumstances warranting appointment of counsel. The Motion for Appointment of Counsel will be denied.

## II. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In his Motion, Choi seeks dismissal or summary judgment on the grounds that: (1) Zeller failed to exhaust administrative remedies; (2) Choi was entitled to qualified immunity; and (3) Zeller has failed to state a valid Eighth Amendment claim. Because the Court finds that Choi did not exhaust administrative remedies, it need not address Zeller's remaining arguments.

### A. Legal Standards

Choi filed his Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving

party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Zeller has not filed a Rule 56(d) affidavit or specifically requested discovery in this matter. Although in his Opposition, Zeller requests that the Court review the surveillance video of the incident, it is not clear whether he has had the opportunity to review it. Regardless of whether this statement could be construed as a request for discovery, the Court concludes that because there is no claim that the record is not complete on the issue of exhaustion of remedies, and that issue is dispositive of the Motion, there is no need to review the video before resolving the Motion. Accordingly, the Court may treat the Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Exhaustion of Administrative Remedies

Choi raises the affirmative defense that Zeller failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is

practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

In Maryland prisons, for the type of grievance asserted by Zeller, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 to -210 (2002); Md. Code Regs. ("COMAR") 12.02.28.02(B)(1) (2018) (defining the ARP). First, a prisoner must file a grievance, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10–206, 10–210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10–210.

Here, JCI's Litigation Coordinator has attested in a declaration that a review of relevant records reveals that Zeller did not file any ARPs during the time period at issue. In his Opposition, Zeller does not dispute his failure to exhaust his administrative remedies or to claim that such remedies were effectively unavailable to him. Although Zeller attaches a handwritten memorandum written on a blank inmate request form and addressed to the ARP Coordinator at Western Correctional Institution in which he requests assistance in filing an ARP, the document does not reference the incident with Choi or otherwise purport to be an ARP relating to that incident. Moreover, it is dated October 11, 2018 and thus was written long after the incident and his filing of the Complaint in this case on July 19, 2017. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ((holding that inmates must exhaust before filing suit); *Perez v. Wis. Dep't of*

*Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."). To the extent that Zeller is arguing that he did not know how to file an ARP, or that he submitted one but it may not have been processed, the Court takes judicial notice that in *Zeller v. Lane,* No. TDC-17-1016, the record revealed that Zeller had filed 10 ARPs, on a variety of issues, between August 2, 2016 and January 9, 2017. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records" (quoting 21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* §5106 at 505 (1977)). Although most were dismissed for procedural reasons, such as the need for more specific dates, times, and names of the prison staff involved, at least three of the ARPs, ARP Nos. JCI-1441-16, JCI-1250-16, JCI-1061-16, were fully investigated and dismissed for lack of merit, and Zeller received instructions specifically informing him of the appeal procedures. *Zeller v. Lane*, No. TDC-17-1016, 2018 WL 3763876, at *2-4 (D. Md. Aug. 8, 2018). Where Zeller was aware of how to file an ARP and an appeal, but JCI records contain no evidence that he filed an ARP relating to the incident with Choi, the Court concludes that Zeller has not created a genuine issue of material fact on the issue of exhaustion of administrative remedies. Because exhaustion of administrative remedies is mandatory, *see Porter*, 534 U.S. at 532, and Zeller has failed to do so, the Court will grant the Motion.

## CONCLUSION

For the foregoing reasons, Zeller's Motion for Appointment of Counsel will be DENIED, and Choi's Motion for Summary Judgment will be GRANTED. Zeller's Complaint will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: May 7, 2019

THEODORE D. CHUANG
United States District Judge